**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DAVID MELAMED, M.D.,

Plaintiff,

-vs-

JOHN T. GIRARDI, M.D. and MEDICAL SPECIALISTS, LTD., an Illinois Corporation,

Defendants.

Case No: 08 CV 1745

Judge Hibbler

Magistrate Judge Keys

**DEFENDANTS' REPLY IN SUPPORT OF THEIR RULE 12(b)(6) MOTION TO DISMISS**

Defendants, John T. Girardi, M.D. ("Girardi") and Medical Specialists, Ltd. ("Medical Specialists") (collectively referred to as "Defendants"), through their counsel, submit this Reply in support of their Rule 12(b)(6) Motion to Dismiss. Contrary to Plaintiff's assertions in his response, Count II fails to state an actionable claim as a matter of law and should be dismissed with prejudice.

Upon review of Plaintiff's Response, one could assume he believes that he is entitled to wages from potential employers whether or not he performs work for the employers. Yet, Plaintiff provides no support for his position that merely having a contract for employment entitles him to wages under the Illinois Wage Payment and Collection Act ("IWPCA") – even though Plaintiff never worked for Defendants.[1] "The IWPCA is concerned with employees receiving proper compensation for their work. Its purpose is to ensure that employees receive all earned benefits upon leaving their employer." *Wilke v. Salamone*, 404 F. Supp. 2d 1040, 1050 (N.D.Ill. 2005) (internal quotations omitted) (emphasis added). The IWPCA does not provide a

[1] For purposes of the Motion to Dismiss, Defendants do not dispute the existence of a contract.

cause of action for an individual who never commenced employment with an employer. Contrary to Plaintiff's argument that the existence of a contract is the only factor relevant under the IWPCA, the IWPCA contemplates that wages be determined not only based on a contract or agreement but also that wages be determined "on a time, task, piece, or any other basis of calculation." 815 ILCS § 115/2. The basis for calculating Plaintiff's work would be the time his services are actually provided to Defendants under applicable law and the alleged contract. (Complaint ¶¶ 15, 24, and Exhibit A, Employment Agreement[2]). Since Plaintiff spent no time working on behalf of the Defendants, he is entitled to no compensation.

Because Plaintiff cannot avoid his own admission in his Complaint that he was never "permitted to work" by Defendants, he cites to inapposite case law that does not support his position. Plaintiff's cases all involve facts where a worker was employed but never received payment from the employer for work completed. *Anderson v. Illinois Bell Telephone Co.*, 961 F. Supp. 1208 (N.D.Ill. 1997) (employee terminated after working and taking disability leave); *Houghtby v. Box*, 2002 WL 992655 (N.D.Ill. May 14, 2002) (employee rendered services and thereafter subjected to wrongful suspension and termination claim); *Shields v. Associated Volume Buyers, Inc.*, 1994 WL 110397 (Mar. 31, 1994) (employee terminated after almost two years of employment). These cases do not address the situation where the claimant never commences employment with an Illinois employer.

While *Anderson v. Illinois Bell Telephone Co.* glosses over the legislative history of a 1984 amendment to the IWPCA, the 1983 floor debates evidence the intended purpose of the amendment. The Legislature made the amendment to clarify the definitions of "employer" and "employee" and to apply the Act to oral agreements for wages. 1983 ILL. H.B. 0880 (West

---

[2] The Employment Agreement was not attached to the Complaint but was filed separately with the Court on April 25, 2008.

1983); Ill. H., Transcripts of Debate, 83rd Gen. Assembly (April 21, 1983) (statement of Rep. Ronan)[3]. On June 22, 1983, Senator Lemke stated that the Legislature sought to amend the IWPCA to make the definitions of "employer" and "employee" the same as under the Unemployment Insurance Act. Ill. Sen., Transcripts of Debate, 83rd Gen. Assembly (June 22, 1983) (statement of Sen. Lemke)[4]. Under the Unemployment Insurance Act, "employment" is defined as "service performed" for an employer. 820 ILCS § 405/206. If the Legislature equated the IWPCA with the Unemployment Insurance Act, it likely intended the terms to be consistent for purposes of statutory interpretation. *People v. B.L.S. (In re B.L.S.),* 202 Ill. 2d 510, 515 (2002) ("[i]n ascertaining legislative intent, it is proper to compare statutes that concern the same subject matter and to consider statutes on related subjects"); *Theofanis v. Sarrafi*, 339 Ill. App. 3d 460, 476 (1st Dist. 2003) ("[t]he court discerning the legislative intent in the use of a term may look to the use of that term in other statutes concerning similar subjects"); *Shegog v. Board of Educ.*, 1999 U.S. Dist. LEXIS 21433, *8 (N.D.Ill. Feb. 17, 1999) (in addition to comparing statutes on related subjects in ascertaining legislative intent, "a court may look beyond the language employed and consider the purpose of the law and the evils the law was designed to remedy, as well as the legislative history"). Thus, both the Unemployment Insurance Act and IWPCA contemplated an employee actually working for an employer before being due any wages. 820 ILCS § 405/236; 815 ILCS § 115/1 *et seq.*

Further, the 1985 debates demonstrate that the Illinois legislature intended the IWPCA to protect only those Illinois employees who completed work for an Illinois employer but were not paid. 1985 ILL. H.B. 2283 (West 1985); Ill. H., Transcripts of Debate, 84th Gen. Assembly

---

[3] A copy of the pertinent portion of the transcript is attached hereto as Exhibit A.
[4] A copy of the pertinent portion of the transcript is attached hereto as Exhibit B.

(May 23, 1985) (statement of Rep. Breslin).[5] In 1985, the Legislature discussed an amendment for public sector employees, noting that the IWPCA was intended to permit "people in the private sector to gain access to collect their wages that are due in owing when they do not have a contract as an employee." *Id.* This indicates the Legislature's intent to provide an avenue for obtaining wages earned even when there is no written agreement – protecting an employee's right to wages for work completed.

Plaintiff also failed to rebut Defendants' more recent case law, holding that the IWPCA applies only where an employee has done at least some work for an Illinois employer while physically present in the state of Illinois. *Vendetti v. Compass Environmental, Inc.*, 2006 U.S. Dist. LEXIS 90404 (N.D. Ill. Dec. 14, 2006). Actual work while being physically present in Illinois is required under the *Vendetti* case. *Id.* Plaintiff admits he never did any work for or on behalf of Defendants. As was the case in *Vendetti*, on Count II Plaintiff has pled himself out of court by admitting he never actually worked for Defendants. *Id.* As such, Count II should be dismissed with prejudice.

Ultimately, Plaintiff is not due any wages under the IWPCA. His sole cause of action would be for any alleged breach of contract for employment that never occurred. For the reasons set forth above, Defendants respectfully request that this Court dismiss Count II with prejudice and for final judgment against Plaintiff on Count II.

Dated: June 9, 2008

Respectfully submitted,

/s/Stacey L. Smiricky
One of the Attorneys for John T. Girardi, M.D., and Medical Specialists, Ltd.

[5] A copy of the pertinent portion of the transcript is attached hereto as Exhibit C.

James Christman
christman@wildman.com
Stacey Smiricky
smiricky@wildman.com
Wildman, Harrold, Allen & Dixon LLP
225 West Wacker Drive
Chicago, IL 60606
(312) 201-2000
(312) 201-2555 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on June 9, 2008, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Joel D'Alba
jad@ulaw.com
Stephanie Brinson
skb@ulaw.com
Asher, Gittler, Greenfield & D'Alba, Ltd.
200 West Jackson Boulevard
Suite 1900
Chicago, Illinois 60606

/s/ Stacey L. Smiricky

STATE OF ILLINOIS
83RD GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

34th Legislative Day April 21, 1983

Speaker Madigan: "The House shall come to order. The House shall come to order. The Members shall be in their chairs. We shall be led in prayer today by the Reverend Richard Chrisman, Pastor of the Chrisman United Methodist Church of Chrisman. Reverend Chrisman is a guest of Representative Harry 'Babe' Woodyard. Would the guests in the gallery please rise and join us in the invocation?"

Reverend Chrisman: "Let us pray. Almighty God, Lord of all nations and peoples, of all times and places, we give You thanks for this new day, for this new opportunity to live and to serve. We give You thanks for this Assembly, for this forum where elected Representatives can meet together to deal with the issues which concern the citizens of this state. We give you thanks for these men and women who are willing to devote the time and the energy necessary to study these issues and to create legislation intended to alleviate the problems. We pray that the decisions reached may be in accord with Your will and that nothing be done which is hurtful to the innocent or the defenseless. We pray that none be led astray by impractical utopianism nor by cynical expediency. May idealism and realism compliment each other. May hopes and dreams not be entirely smothered by the realities of life. May the necessary compromises be made with integrity and goodwill. Guide we pray these, our Representatives, in the pursuit of the good and the helpful. Increase understanding of those who differ and may none lose sight of the high trust which has been placed in them. In the name of God we pray. Amen."

Speaker Madigan: "We shall be led in the Pledge of Allegiance by Representative Bopp."

Bopp - et al: "I pledge allegiance to the flag of the United States of America and to the Republic for which it stands,



EXHIBIT A

District. And the difference is, at present, maximum is 4,000. It's raising it only 1,000 to 5,000. I would ask for a favorable vote."

Speaker Yourell: "Anybody stand in opposition? Hearing no opposition, the question is, 'Shall this Bill pass?'. All those in favor will signify by voting 'aye', those opposed will vote 'no'. The voting is open. Have all voted who wish? Have all voted who wish? Mr. Clerk, take the record. On this Bill, there are 110 voting 'aye', 2 voting 'no'. The Bill, having received a Constitutional Majority, is hereby declared passed. Appearing on the Order of Third Reading Short Debate is House Bill 868. Mr. Clerk, read the Bill."

Clerk O'Brien: "House Bill 868, a Bill for an Act to amend Sections of an Act in relation to public water districts. Third Reading of the Bill."

Speaker Yourell: "The Chair recognizes Representative Flinn."

Flinn: "Thank you, Mr. Speaker. Mr. Speaker, Ladies and Gentlemen of the House, this Bill does the same thing the last two Bills did. The only thing, it applies to public water districts, and the limit is moved from 2,500 to 5,000. I ask for a favorable vote."

Speaker Yourell: "Anyone stand in opposition? Hearing no opposition, the question is, 'Shall this Bill pass?'. All those in favor will signify by voting 'aye', those opposed will vote 'no'. The vote is...the voting is open. Have all voted who wish? Have all voted who wish? Mr. Clerk, take the record. On this Bill, there are 105 'ayes', 4 voting 'no'. The Bill, having received the Constitutional Majority, is hereby declared passed. Appearing on the Order of Third Reading Short Debate is House Bill 880. Mr. Clerk, read the Bill."

Clerk O'Brien: "House Bill 880, a Bill for an Act to amend

Sections of the Illinois Wage Payment and Collection Act. Third Reading of the Bill."

Speaker Yourell: "The Chair recognizes Representative Ronan."

Ronan: "Thank you, Mr. Speaker, Members of the House. House Bill 880 amends the Wage Payment and Collection Act. It defines employer and employee and clarifies the provisions of the Wage Payment and Collection Act, apply to verbal agreements to pay wages as well as written employment contracts. This Bill is recommended by the Department of Labor, their wage payment section, and it just clarifies some definitions in the existing law."

Speaker Yourell: "Does anybody stand in opposition? Hearing no opposition, the question is, 'Shall this Bill pass?'. All those in favor will signify by voting 'aye', those opposed will vote 'no'. The voting is open. Have all voted who wish? Have all voted who wish? Mr. Clerk, take the record. On this Bill, there are 109 voting 'aye', 2 voting 'no'. The Bill, having received the Constitutional Majority, is hereby declared passed. Appearing on the Order of Third Reading Short Debate is House Bill 966. Mr. Clerk, read the Bill."

Clerk O'Brien: "House Bill 966, a Bill for an Act to amend Sections of the Illinois Wage Payment and Collection Act. Third Reading of the Bill."

Speaker Yourell: "The Chair recognizes Representative Homer."

Homer: "This Bill is also one like Representative Ronan's that was recommended by the Department of Labor, and it simply is a clarification Bill. It clarifies, simplifies language that's found in the Section dealing with terminal vacation pay. And unless there's any question, I would urge the Members to support this Bill. I know of no opposition."

Speaker Yourell: "Does anybody stand in opposition? Yes, Representative Greiman."

83RD GENERAL ASSEMBLY

REGULAR SESSION

JUNE 22, 1983

PRESIDING OFFICER: (SENATOR BRUCE)

The hour of nine-thirty having arrived, the Senate will come to order. Prayer today by Rabbi Israel Zoberman of the Temple B'rith Sholom of Springfield, Illinois. And will our guests in the galleries please rise.

RABBI ISRAEL ZOBERMAN:

(Prayer given by Rabbi Zoberman)

PRESIDING OFFICER: (SENATOR BRUCE)

Reading of the Journal.

SECRETARY:

Tuesday, June the 14th, 1983.

PRESIDING OFFICER: (SENATOR BRUCE)

Senator Johns.

SENATOR JOHNS:

Mr. President, I move that the Journal just read by the Secretary be approved unless some Senator has additions or corrections to offer.

PRESIDING OFFICER: (SENATOR BRUCE)

Are there additions or corrections? On the motion, those in favor say Aye. Opposed Nay. The Ayes have it. The Journal is approved. Senator Johns.

SENATOR JOHNS:

Mr. President, I move that reading and approval of the Journals of Wednesday, June the 15th; Thursday, June the 16th; Monday, June the 20th; Tuesday, June the 21st, in the year 1983, be postponed pending arrival of the printed Journal.

PRESIDING OFFICER: (SENATOR BRUCE)

You've heard the motion. Is there discussion? Those in favor say Aye. Opposed Nay. The Ayes have it. The motion prevails. Senator Sommer. If I might have the attention of the Body, we are going to start today on...on House Bills 3rd reading, on Page 7 of your Calendar, at the bottom of Page 7, is House Bill 603. We are going to start on 3rds and we will

EXHIBIT B






sional educational experience, in effect, to permit those institutes to take place in other kinds of places. For example, specifically, the Evanston School District or an Evanston school district wanted to have its teachers institutes at several places of business, at a museum and the current law simply did not permit it. Another possibility would be to have an institute at Argonne National Laboratory, obviously, extremely important, useful, beneficial experiences, but not technically covered by the present law as it is worded.

PRESIDING OFFICER: (SENATOR SAVICKAS)

Is there any discussion? If not, the question is, shall House Bill 873 pass. Those in favor will vote Aye. Those opposed vote Nay. The voting is open. Have all voted who wish? Have all voted who wish? Take the record. On that question, the Ayes are 56, the Nays are none, none voting Present. House Bill 873 having received the constitutional majority is declared passed. House Bill 880, Senator Lemke. Read the bill, Mr. Secretary.

SECRETARY:

House Bill 880.

(Secretary reads title of bill)

3rd...3rd reading of the bill.

PRESIDING OFFICER: (SENATOR SAVICKAS)

...Senator Lemke.

SENATOR LEMKE:

This amends the Wage Payment Act to clarify and define what the definition of employer and employee means and...and this makes the definition the same as the Unemployment Insurance Act. I think it's a good bill. I ask for its adoption.

PRESIDING OFFICER: (SENATOR SAVICKAS)

Is there any discussion? If not, the question is, shall House Bill 880 pass. Those in favor will vote Aye. Those opposed vote Nay. The voting is open. Have all voted who

wish? Have all voted who wish? Take the record. On that question, the Ayes are 58, the Nays are none, none voting Present. House Bill 880 having received the constitutional is declared passed. House Bill 881, Senator Zito. House Bill 883, Senator Maitland. House Bill 884, Senator Holmberg. House Bill 921, Senator Netsch. Read the bill, Mr. Secretary.

SECRETARY:

House Bill 921.

(Secretary reads title of bill)

3rd reading of the bill.

PRESIDING OFFICER: (SENATOR SAVICKAS)

Senator Netsch.

SENATOR NETSCH:

Thank you, Mr. President. This bill deals with indirect costs that are received by State agencies and attempts to set up a uniform orderly procedure for dealing with them. At the present time there really is no statutory law that covers either the application, the receipt, or the accounting of indirect reimbursements; for example, under Federal Grant Programs. This requires that all of them that are available be applied for, that accurate records be kept concerning the application, the use, the deposit and so forth of those indirect reimbursements, that they be deposited within thirty days of receipt and the fund to which they were to be applicable, and if there is no applicable fund that they go into the General Revenue Fund. I think it does tie together a practice which is very loose at the present time. The bill was proposed by and is sponsored by the Legislative Audit Commission. I would solicit your support.

PRESIDING OFFICER: (SENATOR SAVICKAS)

Is there any discussion? If not, the question is, shall House Bill 921 pass. Those in favor will vote Aye. Those opposed vote Nay. The voting is open. Have all voted who

your inquiry, if you don't mind. House Bill 2283, Breslin. Clerk, read the Bill"

Clerk Leone: "House Bill 2283, a Bill for an Act to amend the Illinois Wage Payment and Collection Act. Third Reading of the Bill"

Speaker Matijevich: "The Lady from LaSalle, Representative Breslin, on House Bill 2283."

Breslin: "Thank you, Mr. Speaker. Ladies and Gentlemen, we have something in Ilinois called the Illinois Wage Payment and Collection Act. At the present time, it allows people in the private sector to gain access to collect their wages that are due in owing when they do not have a contract as an employee. This Bill includes employees of the state and any political subdivision thereof, including school districts. So what it does is it includes... it affords to public employees in Illinois the same rights as people have in the private sector to gain their... their wage payments. I move for passage of House Bill 2283."

Speaker Matijevich: "Representative Breslin has moved for the passage of House Bill 2283. Being no discussion, the question is, 'Shall House Bill 2283 pass?' Those in favor signify by voting 'aye', opposed by voting 'no'. Have all voted? Have all voted who wish? The Clerk will take the record. On this question there are 105 'ayes', 4 'nays'. Bob Piel 'aye'. And this Bill, having received the Constitutional Majority, is hereby declared passed. Ryder 'aye'. McCracken 'aye'. House Bill 2437, Mays. The Clerk will read the Bill. And Representative Peg Breslin in the Chair."

Clerk Leone: "House Bill 2437, a Bill for an Act to repeal certain Acts herein named. Third Reading of the Bill."

Speaker Breslin: "Representative Mays."

Mays: "Thank you very much, Madam Speaker, Ladies and Gentlemen



**EXHIBIT C**