HHW

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID MELAMED, | )<br>) |
| Plaintiff | )<br>) |
| | ) No. 08 C 1745 |
| v. | )<br>) The Honorable William J. Hibbler |
| | ) |
| JOHN T. GIRARDI AND MEDICAL SPECIALISTS, LTD., | )<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER

David Melamed alleges that John Girardi and Medical Specialists offered him employment in September 2006 as a doctor in Medical Specialists' office. Melamed signed an employment agreement that, among other things, contained a termination clause providing benefits to Melamed. According to Melamed, Girardi and Medical Specialists then refused to honor the contract. Melamed sued both Girardi and Medical Specialists for breach of contract. Girardi moves for summary judgment, arguing that he was not a party to the contract.

### I. Factual Background

In the September 2006, Melamed sought employment with Medical Specialists as a dermatologist and Mohs surgeon. (Def. 56.1(a) Statement ¶ 15). In late September, Stacy Saxton, Medical Specialists' credentialing coordinator and director of physician services, sent Melamed a "Physician Employment Contract." (Def. 56.1(a) Statement ¶ 16; Pl. Statement Add'l Facts ¶ 2). Melamed signed the Contract and returned it to Girardi. (Def. 56.1(a) Statement ¶ 17).

The preamble to the Contract stated that it was entered into by Medical Specialists and

1

Melamed, and the introduction to the Contract stated that Medical Specialists desired to employ Melamed. (Pl. Statement Ex. A). The final page of the Contract contained a signature line for Melamed and Medical Specialists, but not one for Girardi. (Pl. Statement Ex. A). Nowhere in the Contract does it name Girardi as a party to the agreement or suggest that he accepts responsibility under the agreement. (Pl. Statement Ex. A). After receiving the contract, Girardi wrote an electronic mail to Melamed stating that they "are going to knock it out of the park." (Girardi Dep. at 48).

Girardi is the President and sole shareholder of Medical Specialists. (Def. 56.1(a) Statement ¶ 23). Medical Specialists issued 100 shares of capital stock to Girardi, which Medical Specialists valued at $1000. (Def. 56.1(a) Statement ¶ 25; Pl. Statement ¶ 25). In lieu of annual shareholder meetings, Medical Specialists adopts resolutions by the written consent of Girardi, its sole shareholder. (Def. 56.1(a) Statement Ex. F).

Medical Specialists files tax returns as an S Corporation. (Def. 56.1(a) Statement Ex. H). In 2006, Medical Specialists reported gross receipts of $2,756,485 and a loss of $292,744. (Def. 56.1(a) Statement Ex. H). Medical Specialists paid $1,421,888 in salaries for leased employees and $255,850 in salaries in 2006. (Def. 56.1(a) Statement Ex. H). It also paid Girardi $124,823 in compensation for his duties as an officer. (Def. 56.1(a) Statement Ex. H). Finally, Medical Specialists reported a loan from Girardi of $139,333 at the beginning of 2006 and $133,155 at the end of 2006. (Def. 56.1(a) Statement Ex. H).

In 2007, Medical Specialists reported $1,950,187 in gross receipts and a loss of $134,508. (Def. 56.1(a) Statement Ex. H). During 2007, Medical Specialists paid Girardi $90,686 for his duties as a corporate officer and paid $854,294 in salaries. (Def. 56.1(a) Statement Ex. H). Medical Specialists began 2007 owing Girardi $133,155 and by the end of the year, Girardi had made additional loans to it, and it owed $485,459. (Def. 56.1(a) Statement Ex. H). I

2

Medical Specialists rents its office space from Oakwood Properties, an Illinois limited liability company owned by Girardi. (Pl. Statement Add'l Facts ¶¶ 8-9). In 2006, Medical Specialists paid $169,277 in rent. (Def. 56.1(a) Statement Ex. H). In 2007, it paid $329,087 in rent. (Def. 56.1(a) Statement Ex. H). By May 2008, however, Medical Specialists had fallen behind on its rent, and Girardi, through Oakwood Properties, began sending Medical Specialists letters seeking payment of overdue rent. (Pl. Statement Ex. Q). By the end of 2009, Medical Specialists owed over $300,000 in unpaid rent and taxes, and yet it had not been evicted. (Pl. Statement Exs. O, Q).

## II. Standard of Review

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct., 2548, 91 L.Ed.2d 265 (1986). During the Court's review, it must view all evidence and inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating there is no genuine issue of material fact, and judgment as a matter of law should be granted in their favor. Fed. R. Civ. P. 56(c). Once the moving party has met the initial burden, the nonmoving party must then "go beyond the pleadings" and "designate specific facts showing that there is a genuine [material] issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. The nonmoving party must offer more than a mere scintilla of evidence to survive summary judgment, and conclusory allegations are insufficient to defeat a motion for summary judgment. *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). *Roger Whitmore's Auto. Servs. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th

3

Cir.2005). Rule 56 mandates the entry of summary judgment where a complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).

### III. Analysis

Melamed does not dispute that Girardi was not a party to the employment contract that he signed. Instead, Melamed argues that Girardi should be liable for Medical Specialists' breach of that contract because the Court should disregard the corporate form, pierce the corporate veil and find that there is no distinction between Girardi and Medical Specialists.

A corporation is a legal entity that is separate and distinct from its shareholders, directors, officers, and other corporations with which it may be connected. *Gass v. Anna Hosp. Corp.*, 392 Ill. App. 3d 179, 185, 911 N.E.2d 1084 (2009). Piercing the corporate veil is an equitable remedy that Illinois applies reluctantly to overcome the presumption of corporate regularity. *Id.* at 186. A party seeking to pierce the corporate veil must make a substantial showing that the corporation is really a dummy or a sham for another dominating entity. *Jacobsen v. Buffalo Rock Shooters Supply, Inc.*, 278 Ill. App.3ed 1084, 1088, 664 N.E.2d 328 (1996). A party seeking to prove that the corporate form has been misused must prove that: 1) there is such unity of interest and ownership that the separate corporate personality does not exist; and 2) adherence to the corporate fiction under existing circumstances would sanction a fraud, promote injustice, or promote inequitable consequences. *Gass*, 392 Ill. App. 3d at 186.

In determining whether there is unity of interest and ownership, courts examine among other things whether the corporation is undercapitalized, corporate formalities have been disregarded, dividends have been paid, funds have been commingled, or there is a failure to maintain an arms-length relationship among related entities. *Id.* Although no one factor is dispositive, a corporation's

capitalization is a major consideration in determining whether it is a legitimate corporate entity. *Gallagher v. Reconco Builders, Inc.*, 91 Ill App.3d 999, 1005, 415 N.E.2d 560 (1980). That is because if a corporation is organized and carries insufficient capital such that it is unlikely to have sufficient assets to meet its debts, it is not equitable to allow shareholders to set up a such a flimsy organization to escape personal liability. *Id.* (quoting *Ballantine on Corporations* 302-03 (rev. ed. 1946)). To determine whether a corporation adequately capitalized, courts compare the amount of capital to the amount of business to be conducted and obligations to be fulfilled. *Fiumetto v. Garett Enterprises, Inc.*, 321 Ill. App. 3d 946, 958, 749 N.E.2d 992 (2001).

Melamed first argues that Medical Specialists was not adequately capitalized, relying mostly upon evidence relating to Medical Specialists' financial stability. The mere fact that a corporation is losing money does not demonstrate that it is undercapitalized. *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 379 (7th Cir. 2008); *Firstar Bank N.A. v. Faul Chevrolet, Inc.*, 249 F. Supp. 2d 1029, 1042 (N.D. Ill. 2003). Instead, a party must demonstrate the corporation has so little money that it cannot operate its business. *Judson Atkinson Candies, Inc.*, 529 F.3d at 379.

Melamed points out that Girardi set up Medical Specialists with a $1,000 capital investment. Melamed also points to Medical Specialists' tax records, which indicate that it paid more than $2,700,000 in salaries and incurred nearly $500,000 in rent charges during 2006-2007. No doubt, Medical Specialists payroll and rent demonstrate that the corporation's business was a significant undertaking. No evidence suggests, however, that Girardi set Medical Specialists up to fail or as a sham in order to channel assets from the corporation to his own account. Even though Medical Specialists had considerable obligations in its payroll and rent, it also had significant receipts, taking in over $4,700,000 in gross receipts in 2006-2007. In addition to the capital investment, Medical

5

Specialists also had nearly $500,000 in depreciable assets in the form of office and medical equipment. Medical Specialists made significant insurance payments in 2006-2007. In short, Melamed's argument that Medical Specialists was undercapitalized hinges solely upon the fact that Medical Specialists was not a profitable corporation. As noted earlier, however, the mere fact that Medical Specialists lost money during this two-year period is not sufficient to demonstrate that it was not adequately capitalized. *Judson Atkinson Candies, Inc.*, 529 F.3d at 379.

Melamed also points to the fact Medical Specialists required loans to keep it afloat. In both 2006 and 2007, Girardi infused Medical Specialists with capital, providing it with shareholder loans. Similarly, in 2008 and 2009, Girardi, acting through Oakwood Properties, overlooked 20 months of Medical Specialists' past due rent, totaling over $300,000. But Girardi's willingness to help Medical Specialists suggests that the corporate veil should not be pierced — for Girardi was willing to put more capital at risk to ensure the corporation succeeded and that not that he was draining the corporation of its assets for his personal benefit. *Firstar*, 249 F. Supp. 2d at 1042; *In re Estate of Wallen*, 262 Ill. App. 3d 61, 71, 633 N.E.2d 1350 (1994) (noting that fact that shareholder infused business with cash makes it difficult to conclude he was draining corporation of assets to the detriment of creditors). Melamed points to nothing in the record to suggest that Medical Specialists was undercapitalized.

Next, Melamed argues that Medical Specialists commingled its assets with Girardi's. Melamed's argument here is based upon faulty logic and a gross mischaracterization of the Court's ruling on a discovery motion. Melamed believes that because he cannot match up the rent paid by Medical Specialists in its 2006 and 2007 tax returns to the rent received by Girardi on his corresponding tax returns that there must have been some commingling of funds. But the simple fact that Oakwood Properties received more rental income than Medical Specialists paid in rent does not

support Melamed's rampant speculation that Medical Specialists and Girardi were commingling funds. Instead, the evidence supports a much simpler conclusion: Oakwood Properties had tenants besides Medical Specialists. (Def. Reply, Ex. A).[1] Melamed also argues that Girardi purchased a boat using Medical Specialists' assets. In support of this argument, however, Melamed relies entirely on his own affidavit in which he states that he has "reason to believe that Girardi . . . used assets of [Medical Specialists] to purchase forest land and to purchase a boat." But an affidavit based upon what Melamed has "reason to believe" is not evidence sufficient to overcome a motion for summary judgment. Fed. R. Civ. P. 56(e)(1); *Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Titan Int'l Inc.*, 533 F.3d 555, 562 (7th Cir. 2008). Melamed's allegation that Girardi used assets belonging to Medical Specialists to purchase a boat for himself is without factual support.

Finally, Melamed argues that Medical Specialists did not observe the corporate formalities. Melamed largely relies on illusory conflicts and mischaracterizations of evidence to press this argument. For example, Melamed points out that Medical Specialists provided no corporate minutes. Medical Specialists, however, provided a collection of consent resolutions of its sole shareholder and sole director. (Def. 56.1(a) Statement Ex. F). The Illinois Business Corporation Act allows the use of such written consent in lieu of annual meetings. 805 ILCS §§ 5/7.10, 8.45. Medical Specialists used the consent resolutions to appoint Girardi as the President, Vice President, Secretary and Treasurer of Medical Specialists. (Def. 56.1(a) Statement Ex. F). Melamed also complains that

---

[1] In further support of his argument that Girardi and Medical Specialists commingled funds, Melamed implies that Girardi failed to comply with the Court's discovery rulings concerning Oakwood Properties' rental income. See Pl. Statement Add'l Facts ¶ 17. Melamed grossly distorts the thrust of the Court's ruling. In that discovery hearing, the Court in fact held that it was *not appropriate* to require Girardi to turn over every document related to Oakwood Properties.

Medical Specialists' tax returns list a loan from its shareholder that is not accounted for in the corporate minutes. However, the consent resolutions also contain a resolution that approves of the actions taken by the directors and officers of the corporation since the last meeting. (Def. 56.1(a) Statement Ex. F). Accordingly, Melamed's claim that Medical Specialists did not observe the corporate formalities by failing to produce corporate minutes documenting its annual meetings is without merit.

Although Girardi was the sole shareholder of Medical Specialists, that is not sufficient reason to pierce the corporate veil. The mere fact that Girardi expressed excitement about the finalization of the contract with Melamed does not support an inference that he, and not Medical Specialists, made that contract with Melamed. The record contains no evidence from which a rational trier of fact could conclude that Medical Specialists was a sham corporation and that the presumption of corporate regularity should be disregarded. Because Girardi was not a party to the employment contract, the Court GRANTS his motion for summary judgment.

IT IS SO ORDERED.

Dated 6/18/10
6-18-2010

Hon. William J. Hibbler
United States District Court